1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRISCILLA PESQUEIRA,<br><br>                    Plaintiff,<br><br>          v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | Case No.: 1:20-cv-00911-BAM<br><br>**ORDER REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 20, 22) |

## INTRODUCTION

Plaintiff Priscilla Pesqueira ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1]       Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

[2]       The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 10, 13, 14.)

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for disability insurance benefits on January 26, 2017.  AR 186-87.[3]  Plaintiff alleged that she became disabled on April 21, 2016, due anxiety, depression, neck issues, migraines, valley fever and kidney disease.  AR 222.  Plaintiff's application was denied initially and on reconsideration.  AR 108-12, 114-18.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ Cheryl Tompkin held a hearing on April 12, 2019.  AR 38-78.  ALJ Tompkin issued an order denying benefits on July 10, 2019.  AR 12-32.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

### Hearing Testimony

The ALJ held a hearing on April 12, 2019.  Plaintiff appeared at the hearing by video from Fresno, California, with her attorney, Jeffrey Milam.   Ronald Hatakeyama, an impartial vocational expert, also appeared and testified by telephone.  AR 40.

In response to questions from her attorney, Plaintiff testified that she stopped working because she became disabled.  AR. 44.  She was having numbness in her hands, pain in her arms, chronic trips to the bathroom, and migraines with aura.  Plaintiff confirmed that her hand and arm problems are related to her fibromyalgia and neck issues.  She can use her hands for about ten minutes before she has to stop and rest for about 30 minutes.  Plaintiff also testified that she has limited movement because of recent neck surgery on March 25, 2019.  Due to a brace, she cannot turn her head.   Prior to the surgery, she had trouble reaching forward and could reach forward about half of the day.  She also had problems lifting heavier things and the maximum she could lift was 10 pounds.  AR 45-47.

---

[3]      References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When asked about her abilities, Plaintiff asserted that the longest she could be on her feet is about an hour and the longest she could sit in a chair is about an hour.  She needs to lie down for her problems, and, in an eight-hour day, she typically lies down about half the day.  It has been that way since she last worked.  Plaintiff testified that she had neck surgery because of "excruciating pain" throughout her left arm and shoulder, numbness in her hands, stabbing, throbbing pain, and loss of range of motion.  The neck pain caused trouble with looking in different directions and she would have to reduce things like driving.  AR 47-49.  Plaintiff underwent different treatments for her neck, including physical therapy, injections, epidurals, chiropractic care, medicines, and surgery.  AR 49-50.

When asked about her bladder or bathroom issues, Plaintiff testified that her bladder and bowel issues are potentially caused by her neck.  She has had testing, which showed a polyp, diverticulosis, and upper GI bleeding.  She also has had abdominal pain.  In an eight-hour day, she spends about a quarter of the day in the bathroom.  She has tried water pills, stool softeners, and laxatives.  AR 50-52.

When asked about her headaches, Plaintiff testified that she has migraines about twice a week, and they can last 24 hours.  She takes a special migraine medication, Relpax.  When she has a migraine, she lies down.  Darkness helps, along with rest, medication, quiet, and heating/cooling pads.  AR 52-53.

Plaintiff testified that she has lost about 50 pounds as a result of her disabilities and the impact they have on her eating patterns and digestion.  AR 53-54.  Plaintiff also testified that she has fatigue and malaise, which is related to a combination of her fibromyalgia and depression.  She has tried herbs, teas, medications, and prayer to increase her energy levels.  She also has weakness in her arms and legs.  She uses a cane or walker to assist her, which was prescribed two months before the hearing because of dizziness and instability.  AR 53-55, 64.  Plaintiff confirmed that she has a history of valley fever, which could be a trigger for these issues.  AR 55.

When asked about her depression, Plaintiff reported that she has really dark days one to two times a week.  Those days are exhausting, debilitating, and emotional.  She cries, gets physical pain and aches, and her sadness and crying can lead to vomiting and headaches.  Her friendships have changed because she is unable to keep appointments.  She also struggles with her concentration and focus.  She will sometimes need to be redirected, like when cooking.  She had to drop out of college

because of her issues.  She would have trouble with focus or be off task in the workplace about two to four hours in an eight-hour workday due to pain, depression, anxiety, and fatigue.  AR 56-63.

In response to questions from the ALJ, Plaintiff testified that on a typical day, she wakes up and helps her sons get out the door with assistance from her daughter.  Her husband drives the boys to school, and Plaintiff sometimes drove them before her surgery.  Once they are off to school, Plaintiff is in bed most of the day.  She stopped doing chores around the house about four years prior to the hearing because of fatigue, pain, and medication side effects.  AR 64-66.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE categorized Plaintiff's past work at four jobs as clerk (general), personnel clerk, PBX operator, and sales attendant. AR 67-68.  The ALJ also asked the VE hypotheticals.  For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience who is able to perform work at all exertion levels, except the individual could never climb ladders, ropes, or scaffolds, should avoid concentrated exposure to noise, fumes, dust, gases, and other pulmonary irritants and workplace hazards, such as unprotected heights and moving machinery.  The VE testified that such an individual could perform Plaintiff's past work.  AR 69.

For the second hypothetical, the ALJ asked the VE to assume the same facts as in hypothetical one, except the individual could sit for one hour at a time for a total of six hours in an eight-hour workday, would need to be able to shift positions or stand up every hour at her workstation for five minutes while remaining on task, could stand or walk an hour at a time for a total of six hours in an eight-hour workday, but would need to rest for three minutes off task away from her workstation after standing or walking an hour.  This individual could frequently flex, extend and rotate her head and neck, but could not do so continuously or repetitively, and not for more than 30 minutes without a five-minute break. The VE testified that there would not be any past relevant work or other jobs for this individual because being away from the workstation for three minutes every hour would start to affect productivity.  AR 69-70.

For the third hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work experience who could work at all exertional levels, except she could never climb ladders, ropes or scaffolds.  She should avoid concentrated exposure to noise, fumes, dust, gases, and

other pulmonary irritants and avoid workplace hazards.  She could sit for an hour at a time for a total of six hours in an eight-hour workday but would need to be able to shift positions or stand up every hour at her workstation for five minutes while remaining on task.  She could frequently flex, extend and rotate her head and neck, but could not do so continuously or repetitively, for more than 30 minutes without a five-minute break.  The stand/walk was consistent with six hours with any exertion level.  The VE testified that this individual could perform Plaintiff's past work as personnel clerk, PBX operator, and clerk (general).  AR 71-72.

For the fourth hypothetical, the ALJ added to hypothetical three the additional limitation that the individual would need to use an assistive device.  The VE testified that this individual could still perform the past relevant work as personnel clerk and PBX operator.  AR 72-73.

When asked generally about the off-task tolerance acceptable to an employer, the VE testified that it would be a range of 5% to less than 10%.  For absences, the VE testified that typically one to two absences would be tolerated.  AR 73-74.

For the fifth hypothetical, the ALJ asked the VE to assume the same facts as in hypothetical four, but with the additional limitation that the individual could frequently handle, finger and feel.  The VE testified that the personnel clerk would fit the profile and there would be other jobs at the light exertion levels, such as information clerk, office helper, and mail clerk.  AR 74-75.

Following the ALJ's questions, Plaintiff's attorney asked the VE to add to any of the hypotheticals that the person could use hands for grasping and fingering no more than occasionally and could reach forward no more than occasionally.  The VE testified that none of the cited jobs, past work, or other jobs, would be available.  AR 75.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled prior to January 8, 2019, but she became disabled on that date and continued to be disabled through the date of the decision.  AR 16-32.  Specifically, the ALJ

found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  AR 18. The ALJ identified the following severe impairments:  chronic kidney disease, stage 1; degenerative disc disease, neck; migraines; and fibromyalgia/chronic pain.  AR 19-22.   The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments.  AR 22.

Based on a review of the entire record, the ALJ found that prior to January 8, 2019, the date she became disabled, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she would need to use an assistive device to ambulate, could never climb ladders, ropes, or scaffolds, could sit 1 hour at a time for a total of 6 hours in an 8-hour workday, but would need to be able to shift position or stand up every hour at her workstation for five minutes while remaining on task, could frequently handle, finger and feel, and could frequently flex, extend and rotate her head and neck, but could not do so repetitively for more than 30 minutes without a 5-minute break.  She also should avoid concentrated exposure to noise, fumes, dusts, gases, and other pulmonary irritants, and workplace hazards, such as unprotected heights and moving machinery.  AR 23-28.  Further, the ALJ found that beginning on January 8, 2019, Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:  she would need to use an assistive device to ambulate, could never climb ladders, ropes, or scaffolds, could sit 1 hour at a time for a total of 6 hours in an 8-hour workday, but would need to be able to shift positions or stand up every hour at her workstation for 5 minutes while remaining on task, could frequently handle, finger and feel, could frequently flex, extend and rotate her head and neck, but could not do so repetitively for more than 30 minutes without a 5 minute break.   She also should avoid concentrated exposure to noise, fumes, dusts, gases, and other pulmonary irritants, and workplace hazards such as unprotected heights and moving machinery.  She also would be off task more than 10 percent of the workday.  AR 28-30.

The ALJ determined that prior to January 8, 2019, Plaintiff was capable of performing her past relevant work as a personnel clerk.  AR 30.  Beginning on January 8, 2019, Plaintiff's RFC prevented her from performing past relevant work and there would be no jobs in the national economy that she could perform.  AR 30-31. The ALJ therefore concluded that Plaintiff was not disabled prior to

January 8, 2019, but she became disabled on that date and continued to be disabled through the date of the decision.  AR 31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,* *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

7

**DISCUSSION**[4]

As the sole issue, Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons to reject her symptom testimony.  (Doc. 20 at 7-20.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms prior to January 8, 2019.  AR 24.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints prior to January 8, 2019.  As one reason, the ALJ determined that the objective findings on clinical examinations during the time before January 8, 2019, did not support the level of limitation alleged.  AR 26.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  In this instance, the ALJ considered clinical findings from Plaintiff's primary care provider, who "intermittently noted some findings such as some muscular swelling of the scalp and reduced cervical spine range of motion and soft tissue tenderness," but Plaintiff's gait was consistently observed to be within normal limits and other findings were generally within normal limits or benign.  AR 26, 304-05, 308, 310, 313, 317, 320, 322, 326, 329, 332, 479, 481,

---

[4]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

484-85, 489, 492, 496, 499-500, 511, 515.  In June 2018, Plaintiff had reduced cervical spine range of motion and tenderness (AR 503), but a subsequent exam in August 2018 showed no tenderness and full range of motion (AR 507).  AR 26.

Additionally, the ALJ found that "[l]ongitudinal clinical exams with the pain management provider were not strongly adverse overall."  AR 26.  The ALJ recognized that clinical exams showed "some cervical paraspinal tenderness and trigger points, and reduced cervical spine range of motion."  AR 26, 411, 415.  However, the ALJ also considered that these exams showed Plaintiff's paraspinal muscle strength and tone were normal, there was no instability, the lumbar spine was normal, and there was no edema.  AR 26, 411-12, 415-16.  The bilateral upper and lower extremities showed full range of motion without pain or instability, no tenderness, with full strength with normal tone and no atrophy, normal reflexes, and intact sensation except for later developed paresthesias in the left upper extremity.  AR 26, 411-12, 415-16, 503.  Additionally, Plaintiff demonstrated a normal gait, an ability to stand without difficulty, normal heel-to-toe walking, and appropriate balance.  AR 26, 412, 416. 11F.

Further, the ALJ considered evidence from Plaintiff's clinical examinations with her nephrologist in June 2016 and January 2017, which showed normal extremity range of motion, normal gait and station, normal cardiopulmonary findings, benign neck exam, no abdominal tenderness, masses organomegaly or bruits, and positive bowel sounds.  AR 26-27, 395, 403.  Plaintiff's clinical examination with her neurologist in May 2017 showed no edema in her extremities, with 5/5 strength, normal sensation in the upper extremities, normal stance, and negative Romberg.  AR 27, 432. Plaintiff's clinical exam with her rheumatologist in August 2017 showed some tender/trigger points, but she had 5/5 motor strength proximally and distally, no synovitis, good grip strength and normal elbow, hip shoulder, knee, and ankle range of motion.  AR 27, 434.  A clinical examination with her gastroenterologist in 2018 was benign, including normal neck range of motion, except for some abdominal tenderness.  AR 27, 474.  A clinical examination with her neurosurgeon in November 2019 showed full range of neck motion, 4+/5 strength of the extremities, normal gait and station, negative Romberg, and normal reflexes.  AR 27, 660.

Plaintiff contends that the ALJ's evaluation of the record failed to consider Plaintiff's fibromyalgia and argues that a lack of objective medical findings cannot serve as a basis for discounting Plaintiff's subjective symptom testimony as to her fibromyalgia.  Plaintiff relies in part on *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004), which found that an ALJ errs by effectively requiring objective evidence for a disease that eludes such measurement.  (Doc. 20 at 14-15.)

The Ninth Circuit has recognized that fibromyalgia is diagnosed primarily based on the patient's self-reported symptoms. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).  When a claimant has established a fibromyalgia diagnosis, ALJs are required to consider the longitudinal record. *Id.* at 657 (9th Cir. 2017) (noting SSR 12-2p "warns that after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible'"); SSR 12-2p.  Here, the ALJ considered the longitudinal history of the record. *Alam v. Comm'r of Soc. Sec.*, No. 2:17-cv-0701-JAM-CMK, 2018 WL 4095956, at *9 (E.D. Cal. Aug. 28, 2018), *report and recommendation adopted*, No. 2:17-cv-0701-JAM-DMC, 2018 WL 6431887 (E.D. Cal. Nov. 9, 2018).  The ALJ outlined the record from 2016 (and some records from 2015) through March 25, 2019, when Plaintiff underwent surgery.  AR 19, 24-29.

Moreover, the instant matter is distinguishable from *Benecke*.  Unlike the case in *Benecke*, where the medical records largely pertained to the claimant's fibromyalgia and included diagnoses of fibromyalgia from three different rheumatologists, Plaintiff's medical records include minimal treatment for fibromyalgia with limited findings of tender points.  *See Jones v. Saul*, No. 2:19-CV-01273 AC, 2021 WL 620475, at *12 (E.D. Cal. Feb. 17, 2021) (finding that record contained "minimal references to and treatments for fibromyalgia was not the same thing as requiring objective evidence such as x-rays or definitive test results" and reasoning that claimant's "interpretation of *Benecke* takes its reasoning too far — following plaintiff's logic, raising fibromyalgia would always preclude a finding of non-disability.").  As noted by the ALJ, Plaintiff was treated once by a rheumatologist in August 2017, whom she had last seen in December 2015,[5] and was diagnosed with fibromyalgia with lumbar spine paralumbar trigger points and trigger points along her shoulder girdle.

---

[5]        Plaintiff was not diagnosed with fibromyalgia by the rheumatologist in 2015.  AR 437-38.

1    The rheumatologist recommended exercise, possible physical therapy, and medications.  AR 25, 434-

2    35.  However, there was no evidence of formal physical therapy in the record.  AR 25.

3          Thereafter, the record contains minimal additional treatment records identifying Plaintiff's

4    fibromyalgia in the period prior to January 2019, and no additional specialist treatment from a

5    rheumatologist.  *See* AR 489 (August 15, 2017, no identified trigger points), 491-93 (August 27, 2017,

6    no identified trigger points),498-500 (May 7, 2018, no identified trigger points), 635-37 (September

7    27, 2017, no identified trigger points).  Thus, unlike *Benecke*, this is not a case where the medical

8    records and alleged disabling impairment are attributable solely or primarily to Plaintiff's

9    fibromyalgia.  Indeed, the medical records here all pertain to a fibromyalgia diagnosis after Plaintiff's

10   alleged onset date.  The Court therefore finds that the ALJ did not err by considering that the objective

11   medical evidence did not fully support Plaintiff's allegations regarding the severity of her symptoms.

12   Also, despite relatively normal findings by her rheumatologist and neurologist, the ALJ nonetheless

13   considered Plaintiff's testimony "in placing additional restrictions such as ambulatory assistive device,

14   manipulative and sitting restrictions, giving claimant the benefit of the doubt."  AR 27.

15         As another reason to discount Plaintiff's allegations, the ALJ determined that Plaintiff had

16   reported "engaging in some significant activities of daily living" that were not consistent with her

17   alleged limitations prior to January 8, 2019.  AR 27.  An ALJ may properly discount a claimant's

18   subjective complaints when the daily activities demonstrate an inconsistency between what the

19   claimant can do and the degree that disability is alleged. *See Molina v. Astrue*, 674 F.3d 1104, 1112–

20   13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent

21   with the alleged symptoms"), *superseded by regulation on other grounds*;  *see also Ghanim v. Colvin*,

22   763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the

23   severity of symptoms alleged can support an adverse credibility determination."); *Orn v. Astrue*, 495

24   F.3d 625, 639 (9th Cir. 2007) (an ALJ may discount a claimant's testimony if the claimant's daily

25   activities contradict the testimony or if the daily activities meet the threshold for transferable work

26   skills).

27         Plaintiff asserts that the ALJ failed to explain what activities conflicted and how they

28   conflicted with her testimony.  (Doc. 20 at 10.)  However, the ALJ expressly cited Plaintiff's

activities, which included "driving, helping take care of children, ironing clothes, shopping, and some cooking." AR 27. The ALJ also cited evidence that Plaintiff "was taking college classes and reported doing some gardening after the alleged onset date." *Id.* The ALJ reasonably determined that Plaintiff's ability to engage in these activities was inconsistent with her allegations. AR 59-60 (attended college in 2014, 2015 and 2016; stopped attending two or two and half years before hearing), 61 (trying to go to school after date stopped working in April 2016); 65 (helping get her boys out the door; ironing; driving; cooking); 255 (going to school and studying); 256 (some ironing, cooking, laundry, gardening); 257 (driving); 258 (school 4 days a week); 430 (taking classes in February 2017).

Plaintiff additionally asserts that the ALJ failed to consider Plaintiff's testimony regarding the limitations she had in performing the identified activities. (Doc. 20 at 12.) Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113. Further, a "claimant's completion of certain household tasks can provide a valid reason for discounting her inconsistent symptom allegations, even in the specific context of fibromyalgia pain." *Roberts v. Berryhill*, 734 Fed.App'x 489, 491–92 (9th Cir. 2018). Although the ALJ found that the claimant's allegations were "weakened by inconsistencies between her allegations, her statements regarding daily activities, and the medical evidence," the ALJ nevertheless recognized that Plaintiff experienced some limitations as described in the RFC for the period prior to January 8, 2019. AR 28.

Although not fully discussed by the parties, as another reason attributable to Plaintiff's subjective complaints, the ALJ considered the effectiveness of Plaintiff's treatment with medications. AR 28. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). In the ALJ's evaluation of the third-party report of Plaintiff's husband, the ALJ found the statement "essentially consistent with the claimant's own report, but as with her allegations, the extent of limitations is not supported by the record as a whole." AR 28. The ALJ proceeded to note that Plaintiff "had routine yet effective mental health treatment when compliant" and "[s]he also had fairly effective pain management when

1    compliant with pain treatment modalities." AR 28.  Plaintiff generally has not challenged the ALJ's

2    findings regarding the effectiveness of her medications prior to January 8, 2019.[6]

3            As a final matter, Plaintiff appears to challenge the ALJ's assessment by asserting that the

4    "ALJ has further failed to explain, with any level of specificity that can prove that the finding was not

5    arbitrary, why prior to January 8, 2019 Plaintiff was not credible but after this date she was found to

6    be credible." (Doc. 20 at 17.)   Plaintiff's attempt to undermine the ALJ's evaluation of Plaintiff's

7    subjective complaints on this basis is not persuasive.  The ALJ found that beginning on January 8,

8    2019, Plaintiff's allegations regarding her symptoms and limitations were consistent with the objective

9    medical evidence.  In particular, the ALJ cited objective medical evidence that Plaintiff's physical and

10   mental condition had worsened, including clinical examination records showing that Plaintiff appeared

11   distressed, her gait was slow and antalgic, and her strength was significantly limited with decreased

12   sensations.  AR 29, 726-29.  The ALJ also noted that a July 2018 MRI showed a disc bulge at C5-6

13   and cord effacement (AR 728) and that Plaintiff underwent a cervical discectomy and fusion at the C5-

14   6 level with graft and instrumentation on March 25, 2019 (AR 736-44).  AR 29.  The ALJ's

15   conclusion that Plaintiff had worsening signs and symptoms and increased treatment with surgery after

16   January 8, 2019, is supported by substantial evidence.  AR 29.  Prior to that time, however, Plaintiff's

17   allegations did not demonstrate the same consistency with the objective medical evidence nor did the

18   objective medical evidence demonstrate a worsening of Plaintiff's condition.  The ALJ indicated that

19   Plaintiff benefitted from treatment modalities and "her symptoms were fairly stable during most of the

20   relevant time period, beginning to worsen shortly prior to the established onset date."  AR 26.  For

21   instance, the ALJ cited evidence that Plaintiff continued to have some benefit with an epidural

22   injection in December 2018, after worsening of Plaintiff's pain in November 2018.  AR 25-26, 519,

23   677.

24           For the reasons stated, the Court concludes that the ALJ did not commit reversible error in

25   evaluating Plaintiff's subjective complaints.

26   ───────────────

27   [6]       Even if this reason for discounting Plaintiff's testimony is inadequate, however, there are sufficient
     other reasons provided to the support the assessment of Plaintiff's subjective complaints. *See Batson*, 359 F.3d
28   at 1197.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Priscilla Pesqueira.

IT IS SO ORDERED.

Dated:   **May 26, 2022**                         /s/ *Barbara A. McAuliffe*

UNITED STATES MAGISTRATE JUDGE

14